UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:24-cr-226-12 (BAH) |
| : | |
| ABRIAN WALKER, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing as to Defendant Abrian Walker (herineafter, the "Defendant").[1] On February 6, 2025, the Defendant pled guilty to a Superseding Information (ECF No. 130), charging him with Conspiracy to Distribute and Possess with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. Pursuant to the terms of the plea agreement (ECF No. 140) and for the reasons set forth below, the United States respectfully requests that the Court impose a sentence of 12 months of incarceration (with half of that term to be satisfied by home confinement or community confinement), to be followed by 36 months of Supervised Release.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

As this Court is aware, this case centers on a violent drug trafficking organization ("DTO") that primarily distributed narcotics in and around the 2100 block of Maryland Avenue, NE, Washington, D.C., as well as the surrounding streets. As set forth the in Statement of Offense (ECF No. 141), the Defendant was an associate of that crew and participated in the crew's drug trafficking.

---

[1] Sentencing is scheduled for May 9, 2025.

Specifically, the evidence in this case showed that the Defendant was present in and around the crew's trap house at 1919 I Street, NE, Apartment 101, and engaged in the manufacture, packaging and sale of narcotics on multiple occasions.

For example, on March 17, 2024, the defendant was captured on video inside of Apartment 101, selling drugs to a suspected narcotics customer. On March 22, 2024, the defendant was again inside Apartment 101, cooking cocaine into crack cocaine for distribution while receiving pointers from a co-defendant about how to cook crack cocaine. On April 18, 2024, the Defendant was again inside Apartment 101 cooking cocaine into crack cocaine in the presence of another co-defendant.

On May 15, 2024, at around 6:00 a.m., law enforcement executed multiple search and arrest warrants, including a search warrant for the Defendant's residence. From the Defendant's two-bedroom residence, law enforcement found multiple plastic baggies commonly used in the distribution of narcotics and two clear plastic twists each containing cocaine.

## II.   LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
    a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b) To afford adequate deterrence to criminal conduct;
    c) To protect the public from further crimes of the defendant; and
    d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
    a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        i) Issued by the Sentencing Commission . . . ; and
        ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
    a) Issued by the Sentencing Commission . . . and
    b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guideline range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

### III. GUIDELINES CALCULATION

#### A. Total Offense Level

The base offense level for a violation of 21 U.S.C. §§ 841(a)(1) and 846 is governed by U.S.S.G. § 2D1.1(c). As detailed in the Final Presentence Report (the "PSR") (ECF No. 214) and

the plea agreement, because the Defendant is accountable for less than 50 grams of cocaine, the base offense level for Count One is 12. *See* PSR ¶ 87. Because the Defendant knew at least one firearm would be possessed in connection with the offense, an additional two points are added. *See id.* ¶ 88. After application of a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a), the final offense level is 12. *Id.* ¶¶ 93, 95.

### B.  Criminal History Category

The PSR writer calculates the Defendant to have two criminal history points, which places him in Criminal History Category II. *See* PSR ¶¶ 97-99. The Government agrees with this assessment.

### C.  Sentencing Guideline Range

Based on a final offense level of 12 and Criminal History Category II, the resulting Guideline range is 12 to 18 months of incarceration, three years of Supervised Release, and a fine range of $5,500 to $1,000,000. *See* U.S.S.G. §§ 5D1.2(c) and 5E1.2(c)(3). Because the range falls within Zone C of the Sentencing Table, the Guidelines allow no more than half of the Defendnat's sentence to be served through community confinement or home detention rather than imprisonment. *See* U.S.S.G. § 5C1.1(d)(2).

## IV.  ARGUMENT

As stated above, the United States respectfully requests that the Court sentence the Defendant to 12 months of incarceration (with half of that term to be satisfied by home confinement or community confinement), followed by 36 months of Supervised Release. For the reasons detailed below, the United States respectfully submits that this recommended sentence is sufficient, but not greater than necessary, to serve the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

### 1. The Nature, Circumstances, and Seriousness of the Offense

It is undisputed that the nature, circumstances, and seriousness of the offense at issue are significant. Although it is true that this Defendant, unlike many of his co-conspirators, seems to have primarily dealt cocaine, rather than fentanyl, this type of behavior still has devastating impacts. Widespread drug abuse and addiction harms users and their families and friends, and it tears at the very fabric of communities. Moreover, drug trafficking—especially open-air drug trafficking like the brazen behavior involved in this case—too often brings with it violence. Indeed, multiple shootings involving this crew were charged in this case, and while the Defendant himself is not alleged to have been involved, he was aware that at least one firearm would be possessed by the crew. Put simply, the Defendant chose to engage in very serious criminal activity—drug trafficking—and he chose to do so as part of a violent crew who wreaked havoc on an entire residential community.

### 2. The Defendant's History and Characteristics

The Defendant has two criminal history points. Although the United States recognizes the difficult circumstances of the Defendant's upbringing, the Defendant's involvement with this crew is incredibly troubling. Nor does it appear that his prior contacts with the law have served as a wake-up call to interrupt the trajectory he was on prior to his May 15, 2024, arrest in this case.

### 3. The Need to Promote Respect for the Law and Deterrence

As called for by the statute, the sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). The United States respectfully submits that these needs weigh in favor of the recommended sentence.

### 4. Other Factors

The United States' recommended sentence is also justified to give the Defendant the opportunity to participate in programs and have an incentive to avoid criminal conduct in the future.

## V. CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the Defendant to 12 months of incarceration (with half of that term to be satisfied by home confinement or community confinement), followed by 36 months of Supervised Release. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. Bar No. 481866

By: */s/ Solomon S. Eppel*
SOLOMON EPPEL
DC Bar No. 1046323
ANDREA DUVALL
AR Bar No. 2013114
Assistant United States Attorneys
601 D Street, NW
Washington, D.C. 20530